988

District Court, S. D. California, Central
Division.
May 5, 1933.

Benjamin F. Bledsoe, of Los Angeles, Cal., for plaintiffs.

Lyon & Lyon and John M. Martin, both of Los Angeles, Cal. (Leonard S. Lyon and I. L. Fuller, both of Los Angeles, Cal., of counsel), for defendant.

COSGRAVE, District Judge.

Action for infringement of patent No. 1,610,570, applied for October 16, 1924, and issued December 14, 1926. The patent is for new and useful improvement of knockdown and portable combination form and traveler for constructing inclined concrete arches, and the litigation involves the construction of dams.

Dams of the type here involved are made up of a series of arches extending across the course of the stream, supported on buttresses extending in the direction of the stream flow. The buttresses are first constructed, and the arches are supported between the buttresses, the convex or outer face of the arch up stream and the concave or interior down stream. The dam is built inclined down stream from the perpendicular. Since the water pressure increases with the depth, the dam is constructed heavy at the base tapering upward. For the same reason the buttresses taper towards the top.

A secure foundation having been found and buttresses built, forms are prepared into which the concrete forming the dam is poured, that forming the exterior curve, or upstream face of the arch, is called the extrados, and the complementary form, the one that forms the interior curve or downstream face, is called the intrados. The terms will be used to describe the respective confining devices or panels between which the concrete is poured. The gradual thinning of the dam necessary as the height increases can be brought about either by lengthening the extrados or upstream form, thereby increasing the length of the upstream face of the arch and increasing the radius of the arch, leaving the interior or downstream face uniform throughout, or the same result can be secured by lengthening the intrados and increasing its radius whereby the interior face of the arch can be made longer leaving the extrados or upstream face uniform throughout. The tapering of the buttresses with the consequent continually increasing distances between them also compels a constantly increasing length of its intrados even where the thinning is effected by increasing the length of the intrados.

Under the old form of construction of dams with inclined arches, the woodwork used in making the forms that held the poured concrete was not capable of use a second time, but, as soon as each successive pouring of concrete was finished and the necessary hardening had taken place, it was taken out and thereby destroyed. The patented device provides a form supported upon trusses which, after having been used at one stage of the concrete pouring, can be moved and used indefinitely for additional pourings. Not only can it be moved, but it can be adapted to different sized arches, in that its length and contour can be changed. The movable quality and adaptation to the new proportions are the vital features of the invention.

The patent in this case comprises a system of forms for supporting wet concrete in the construction of vertical walls and inclined vertical arches. A system of mold structural forms is described comprising an assembly or combination of trusses forming a vehicle which supports the intrados forms in combination with extrados forms between the buttresses. The patent shows a series of segments or arcs of wood supported by chords extending from the face of one buttress to that of another. These are primary segments. Outside of each primary segment is a secondary segment which is supported by struts. The struts extend through radial ways in the primary segment and the distance between the two segments is regulated by a series of holes bored in a strut and secured by bolts run through the primary segments. On the face of the outer or secondary segment, lagging is laid and upon this the concrete rests. A plurality of trusses similarly formed and covered with lagging make the intrados form.

The length of the primary segment remains uniform. When it is desired to increase the size of the intrados form, thereby expanding the surface upon which the con-

crete rests, the struts are extended an increased distance beyond the primary segment. This produces a separation of the faces of the form resting against the concrete. The openings thus necessarily resulting are filled with additions to the sections where the lines of separation occur in any suitable manner. The length of the primary segment remains uniform, but, when the distance between the two segments is increased by the lengthening of the struts, and the secondary segment required to rest upon the abutments, obviously a greater length is required and is obtained in the manner indicated.

The entire form rests upon rails which in turn are supported on brackets attached to the sides of the buttresses, and the form may be raised or lowered at will. No change is required in the extrados form. It is merely elevated so that it may act as a counterbalancing member necessary for confining the next run of concrete.

Plaintiffs' patent clearly contemplates a structure where the gradual thinning of the concrete is secured by a change in the intrados form. The patent declares that "in arches of this character it is customary to maintain for each setting, a predetermined radius for the extrados and an expanding radius for the intrados, thus allowing the thickness of the dam to gradually diminish as the structure approaches the top. Said predetermined radius may be constant throughout the arch." One of the objects of the invention is to provide for changing the radius of the form at will and for determining the radius of any intrados form in any relative positions.

The first claim describes an extrados form of a predetermined radius and an intrados form of radial struts and expanding segments, all forming a carrier to support a plurality of panels which are adjustable to the changed radii of the carrier. In the third claim the intrados form is described as being made up in part with struts and segments adjustable relative to the chord. In the fifth claim the segments are described adjustable relative to each other. The material part of the seventh claim describes an intrados form for the formation of arches between buttresses comprising inclined panels and trusses for supporting the panels; said trusses being provided with means for changing the radius of the intrados form. The claims here under consideration, 1, 3, 5, and 7, distinctly claim the element of adjustability of the intrados form to the necessary proportions of its new position.

In this, I think, lies the utility of the invention.

The act charged as infringement occurred when defendant constructed the Big Dalton Dam, which he did by the use as an intrados form of a rigid truss not capable of enlargement. It was not necessary to enlarge the intrados form, as the dam shows no change in the length of the arch formed by the intrados. That remained constant throughout the construction. The outside faces of the buttresses were vertical. They were built double with a space between, the interior faces thereof tapering, but the exterior faces did not. The result was that the distance between the faces of the buttresses was uniform throughout the entire heighth of the dam. The thinning of the arches was effected by increasing the length of the extrados form.

It happens, however, that it is impossible to release the form from the concrete after the latter has become set for use in the next pouring, unless means are provided for disengaging it from the face of the concrete. It is easy to see how this can be accomplished under the Milburn patent, for in shortening the radial struts the face of the form is disengaged. In the Big Dalton project, however, while it was not necessary to make any change in the intrados form itself, it was necessary to disengage it from the concrete. This was accomplished by making the lower sections of the intrados form directly in contact with the buttress adjustable to the extent that it could be withdrawn from the position occupied when the concrete was poured. For this purpose the two lower sections were each hinged at the upper end of the section, and, before pouring, wedges were inserted which extended the two sections mentioned to the necessary position against the buttress. After the concrete had hardened, the wedges were removed and the sections allowed to collapse.

Plaintiffs claim that this is the process described in the patent, that, when the segments were withdrawn, the wedges acted as struts, and that the collapsing of the two sides or portions of the lower sections is the identical process that is described in the patent as being accomplished by withdrawal of the supporting struts.

I do not think that it can justly claim that the radius, in the sense of its being the radius of the arc described by the form, was changed merely by removing two portions of it. The function described in the patent itself is the adaptation of the form to the size and proportions of the new position. The radius of

defendant's truss, as a truss, remained the same throughout, and in this sense its radii was not changed. Claim 1 of the patent describes a carrier supporting a plurality of panels "which are adjustable to the changed radii of the carrier." I do not think that the collapsing of the sides described comes within this claim because a new position is contemplated, all of the radii conform thereto. In claim 5 the expression "The segments being adjustable relative to each other" means that in their adjusted position, or relation to each other, they are and constitute segments. When released and collapsed for the sole purpose of moving the form, they do not properly come within the definition of segments. Likewise in claim 7 the expression "said trusses being provided with means for changing the radius of the intrados form" plainly has reference to the intrados form when in position and when used as a form, that is, supporting the poured concrete until it hardens.

Defendant, however, furnishes ample proof that the identical method employed by him was described in various engineering publications and actually used in the New York traffic tunnels as early as 1907 or 1908. He claims, therefore, that this method was not novel at the time of the issuance of the patent, not, it is true, in the construction of dams, but in other structures similar in all essentials. It is shown clearly that as early as 1907 the intrados form was released from the concrete by collapsing the lower portions of the truss, substantially similar to the method used in the Big Dalton Dam.

The method of collapsing the form used by defendant in the construction of the Big Dalton Dam is, it seems to me, described in patent to Venable, No. 1524325, issued before plaintiffs' application. The method was used as early as 1908 in the construction of the New York tunnel extension of the Pennsylvania Railroad and the Long Island approaches of the East River tunnel and described in the published transactions of the American Society of Civil Engineers, vol. 69, paper No. 1162.

Having in mind that the main purpose of the patent is the quality of economical change so as to adapt the same construction to the necessities of an arch of changed proportions, thereby avoiding the expense of construction of a new form as in the old method, it seems plain to me that the change in radius does not include the release of two of the panels for a temporary purpose only, but rather means a change in the radius of the arc described throughout its compass so as to make an entirely new arch.

For the reasons set forth, I do not think infringement has been proved. Judgment is therefore ordered in favor of defendant.